ORDERED.

Dated:  October 27, 2015

_____
Michael G. Williamson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                                                  Case No. 8:15-bk-07039-MGW
                                                                                        Chapter 11
Kraz, LLC,

    Debtor.
_____/

## MEMORANDUM OPINION ON AMOUNT OF CLAIM

More than three years ago, a state court denied Branch Banking & Trust's attempt to foreclose its mortgage on the Debtor's property because the state court determined BB&T had improvidently declared a default. Now, as part of its claim in this bankruptcy case, BB&T seeks to recover interest that accrued on its loan while its foreclosure action was pending, as well as attorney's fees and costs incurred after the adverse judgment but before the petition date. BB&T also claims interest that has accrued (at the contractual default rate) since it declared a second default six months ago when the Debtor failed to pay the note in full on the maturity date. The parties have filed cross-motions for summary judgment seeking a determination of the amount of BB&T's claim as a matter of law.

The Court concludes BB&T is not entitled to accrued interest or attorney's fees and costs as a matter of law. The state court judgment plainly provides that the loan would be reinstated

nunc pro tunc to the day before the default was declared and that no "accrued principal and interest payments" would be due. And because BB&T orchestrated a default for its own benefit, it would be improper to award BB&T fees incurred in enforcing its promissory note in state court (even post-judgment). There is a question of fact, however, as to whether BB&T is entitled to post-maturity default interest because it is unclear whether BB&T prevented the Debtor from timely tendering the required balloon payment. Accordingly, the Court will grant the Debtor's motion for summary judgment as to accrued interest and attorney's fees and costs as a matter of law but deny the summary judgment motion as to the post-maturity interest without prejudice.

## Undisputed Facts

Despite years of contentious litigation between the parties, the facts of this dispute are, for the most part, uncontested and relatively straightforward. The Debtor operates a storage facility and flex commercial space known as Causeway Self Storage. It developed the storage facility using nearly $5.2 million in funding from Colonial Bank in 2006.[1] In exchange, the Debtor gave Colonial Bank a $5.2 million note, with a five-year balloon payment, secured by a mortgage on the storage facility.[2] Three years later, Colonial Bank went into receivership, and the FDIC sold substantially all of its assets—including the Debtor's loan—to BB&T.[3] In January 2010, just months after it acquired Colonial Bank's assets, BB&T sued to foreclose its mortgage on the Debtor's storage facility, claiming the Debtor's loan was in default.

---

[1] Doc. No. 129-2.

[2] Doc. No. 129-1. The terms of the loan provided for interest only payments for the first twenty-four months. Colonial Bank was then supposed to give the Debtor written notice that it was required to begin making principal and interest payments. *Id.*; Doc. No. 129-2. The Debtor apparently was never given notice it was required to begin making principal and interest payments.

[3] Doc. No. 129-2.

But Judge William Levens, the state court judge who presided over the foreclosure action, ruled against BB&T at the conclusion of a March 1-2, 2012 bench trial.[4] After considering the evidence at trial, Judge Levens found that the Debtor, in fact, had a long and unblemished record of good-faith payments and that a bona fide default never occurred.[5] According to Judge Levens, BB&T improvidently initiated a default to maximize collection from the FDIC under a loss-share agreement.[6] Because he concluded BB&T breached its duty of good faith and fair dealing to the Debtor, Judge Levens determined BB&T's foreclosure claim should be denied in its entirety.[7]

So on May 18, 2012, Judge Levens entered a final judgment ordering the Debtor's loan reinstated as of June 30, 2009, as well as extending the maturity date fourteen months (presumably to account for the time the parties were in litigation), as follows:

> It is therefore ORDERED and ADJUDGED that the loan and all loan documents be reinstated *nunc pro tunc* to June 30, 2009 (i.e., pre-"default"). The terms of the loan and the loan documents shall remain in effect as they would have as of that date. The maturity of the loan is extended fourteen months from the effective date of this order. As there was no "default," there are no accrued principal and interest payments due from Defendants. Rather, Defendants will pick up payments where such payments left off in June 2009 (after such principal is credited with all such amounts as detailed below).[8]

---

[4] Doc. Nos. 129-2 & 129-3.

[5] Doc. Nos. 129-2 & 129-3.

[6] Doc. Nos. 129-2 & 129-3.

[7] Doc. No. 129-3.

[8] *Id.*

The final judgment required BB&T to credit the Debtor for payments the state court receiver made to BB&T and any payments the state court receiver received from the Debtor.[9] Under the final judgment, no loan payments were due until the parties agreed on the new principal (after certain credits were applied) and a new payment schedule.[10]

BB&T appealed the state court judgment. While the appeal was pending, BB&T determined that the principal balance due on the loan as of June 30, 2009—taking into account the credits required by Judge Levens—was $4,799,763.98 and that the new monthly payment on the loan was $30,760.49.[11] The Second District Court of Appeal affirmed Judge Levens on eleven of the twelve issues BB&T raised on appeal.[12] After he was affirmed by the Second DCA, Judge Levens entered an order providing that the effective date of the final judgment was February 28, 2014, which meant the Debtor was required to begin making the $30,760.49 monthly payment beginning on that date and that the new maturity date for the loan was April 28, 2015.[13]

BB&T does not dispute that the Debtor made each of the $30,760.49 monthly payments between February 28, 2014 and April 28, 2015. Nor is there any dispute that the Debtor did not pay the note in full by April 28, 2015, although the reason for nonpayment does appear to be in

---

[9] *Id.*

[10] *Id.*

[11] Doc. No. 129-4.

[12] Doc. No. 129-7. The issue that BB&T prevailed on was a secondary issue and is of no consequence to the current dispute between the parties.

[13] Doc. No. 129-18.

dispute. In any case, on April 30, 2015, two days after the extended maturity date, BB&T filed an action in federal court seeking to foreclose its mortgage on the Debtor's property.[14]

The Debtor filed this chapter 11 case to stop BB&T's foreclosure action.[15] Soon after the case was filed, BB&T moved to dismiss the case as a bad-faith filing under *Phoenix Piccadilly*.[16] BB&T also moved to confirm the automatic stay was not in effect because (1) the Debtor had not made adequate protection payments; (2) the case is a bad-faith filing; (3) BB&T was free to pursue claims against guarantors (the Debtor's principals); and (4) this is a single-asset case, and the Debtor is manifestly and permanently incapable of confirming a plan.[17] The Court set the two contested matters for a final evidentiary hearing.

It quickly became apparent to the Court that this case had none of the hallmarks of a typical *Phoenix Piccadilly* bad-faith filing.[18] To be sure, this is a two-party dispute. But the typical *Phoenix Piccadilly* bad-faith filing involves a debtor who loses a foreclosure case and then files for bankruptcy on the eve of foreclosure to thwart its lender from exercising its *in rem* remedies. And there are generally other efforts to delay the bankruptcy case. Here, by contrast, the Debtor initially prevailed in the state court foreclosure action, filed this case soon after the district court foreclosure action was filed, and has expeditiously proceeded to confirmation. The only real basis for dismissal or granting stay relief is if there is no hope for confirmation within a reasonable period of time.

---

[14] Doc. No. 129-24.

[15] Doc. Nos. 1 & 4.

[16] Doc. No. 42.

[17] Doc. No. 41.

[18] Doc. No. 115 at 78-81.

5

The Debtor's ability to confirm a plan within a reasonable time principally turns on two issues raised by BB&T's motions: (1) the amount of BB&T's claim; and (2) the value of the Debtor's property. The Court took evidence on both of those issues during three days of trial.[19] Both sides were fully heard on BB&T's motions at trial and supplemented their arguments as to the amount of BB&T's claim with cross-motions for summary judgment.[20] So the Court has before it the parties' cross-motions for summary judgment on the amount of BB&T's claim, and the Court is permitted under Rule 52(c) to enter final judgment on an issue when a party has been fully heard.[21]

## Conclusions of Law

Although the parties both agree that the principal amount of BB&T's claim as of June 30, 2009 was $4,754,860.26,[22] they nonetheless remain more than $2.5 million apart on the total amount of BB&T's claim. On the one hand, the Debtor says BB&T's claim is now $4,590,573—$164,287.26 less than it was on June 30, 2009.[23] On the other hand, BB&T says its claim is now $7,194,719.63. BB&T has added three components of damages to the agreed principal that accounts for the dispute over the claim amount.

---

[19] The trial was conducted on September 1, 2015; September 23, 2015; and October 1, 2015.

[20] Doc. Nos. 129 & 130.

[21] With one minor exception not relevant here, Federal Rule of Bankruptcy Procedure 7052 incorporates Federal Rule of Civil Procedure 52. Federal Rule of Bankruptcy Procedure, in turn, provides that Rule 7052 applies to contested matters.

[22] Claim No. 3-1; Doc. No. 129-21. In particular, BB&T contends that the principal balance on the loan was $5,146,773.61 as of June 30, 2009. After crediting the Debtor with $391,913.35 in "Receiver Credits" as required under Judge Levens' final judgment, BB&T recalculated the principal loan balance as $4,754,860.26. Although BB&T credited those payments as of February 28, 2014 (the effective date of the final judgment), the Court's analysis remains the same.

[23] Doc. No. 130.

First, BB&T says it is entitled to $1,060,640.25 in accrued interest from June 30, 2009 through April 28, 2015. Second, BB&T says it is entitled to $671,780.48 in attorney's fees and costs. Third, BB&T says it is entitled to $410,350.50 in default interest since April 28, 2015. The Court concludes that BB&T is not entitled to accrued interest or attorney's fees as a matter of law.

### BB&T is not entitled to accrued interest.

The dispute over whether BB&T is entitled to accrued interest centers on one sentence in Judge Levens' final judgment: "As there was no 'default,' there are no accrued principal and interest payments due from Defendants."[24] According to the Debtor, that language plainly precludes BB&T's claim to interest that accrued from June 30, 2009 through the effective date of the judgment.[25] BB&T, for its part, makes a grammatical argument that the plain language does not preclude a claim for accrued interest.[26] To the contrary, the Court concludes the plain language of Judge Levens' final judgment mandates that BB&T is not entitled to accrued interest from June 30, 2009 through the effective date of the final judgment.

The final judgment specifically provides that the loan is to be reinstated "nunc pro tunc" to June 30, 2009.[27] "Nunc pro tunc," of course, is Latin for "now for then."[28] The final judgment also provides that the Debtor "will pick up payments where such payments left off in June 2009."[29] A reasonable interpretation of the simple phrase "nunc pro tunc," then, is that when the

---

[24] Doc. No. 129-3.

[25] Doc. No. 130 at 10-14.

[26] Doc. No. 129 at 14-19.

[27] Doc. No. 129-3.

[28] Black's Law Dictionary 1097 (7th ed. 1999).

[29] Doc. No. 129-3.

7

loan payments recommenced, the reinstatement would be now (i.e., the effective date of the judgment) for then (i.e., June 30, 2009). To interpret the phrase "there are no accrued principal and interest payments due" to *require* an accrual of interest—aside from being contrary to the language of the judgment on its face—would render the phrase "nunc pro tunc" superfluous and meaningless.

It is worth noting that this Court's interpretation of Judge Levens' order is consistent with BB&T's same understanding at the time the judgment was entered. On October 8, 2012, BB&T filed a motion seeking to compel compliance with a final judgment that Judge Levens entered six months earlier. In that motion, BB&T stated that the adjusted loan balance to be amortized "omits and excuses approximately twenty-five (25) months of interest provided for under the Loan Documents from the date that the Obligors stopped paying on the Obligation until the judgment date."[30] In a second motion, one filed on December 20, 2013 in which BB&T sought to establish an effective date of the final judgment and the final amount that was due on the loan, BB&T did not claim any amounts for accrued interest after June 30, 2009.[31]

A colloquy between Judge Levens and BB&T's counsel at a February 13, 2014 hearing on BB&T's second motion is illuminating:

> Court: Well at some point we have to— we have to have a new starting line. And use the old NASCAR adage, you know, we have had a wreck, they have cleaned up the track, and now it is time to restart the race. So just from a simplistic standpoint, when do you propose that we restart the race?
>
> \*\*\* \*\*\* \*\*\*
>
> Counsel: Because the other interest that is listed is what is in the loan history that is admitted into evidence at trial. It is not

---

[30] Doc. No. 129-4 at 4.

[31] Doc. No. 129-14.

|  |  |
|---|---|
|  | anything that has been added posttrial which we— other than that one month because that is based on the language of the judgment itself only because what was admitted into evidence ended on May 29 of 2009. That is the only difference. And in the response, I pointed to the page and the exhibit number that is on. So to talk about— |
| Court: | Well, again, I am going to shoot from the hip or from memory or whatever, **but it seems to me like what I was trying to do is basically freeze things. I did not want all kinds of— I didn't think it was fair while both sides were battling it out on appeal to continue running up additional interest.** |
| Counsel: | **Correct.** |
| Court: | **Basically, just put things back to status quo.** |
| Counsel: | Yes, and that is what the accounting— |
| Court: | Restart the— |
| Counsel: | That is what the accounting that the bank filed— |
| Court: | Does. |
| Counsel: | —does. I mean, it is only interest that was listed through May 2009, and then the judgment itself says through June 2009. So as the one month based on the per diem that was already in the record. And it stated in the accounting— |
| Court: | **So you are not trying to tack on—** |
| Counsel: | It is that seven— |
| Court: | **—interest during all this—** |
| Counsel: | **No. There is no interest added on for the entire— from June 2009 through today, there is no interest added on in this accounting that was filed with the court.**[32] |

---

[32] Doc. No. 129-17 at p. 6, ll. 7-12; p. 14, l. 4 – p. 15, l. 14 (emphasis added).

BB&T, however, says it is not judicially estopped by its earlier statements from taking the position here that it is entitled to accrued interest.[33]

While that may be the case, BB&T's earlier statements—made around the time Judge Levens issued his final judgment and other related orders—are certainly probative as to the meaning of the phrase "there are no accrued principal and interest payments due." It is true that BB&T has taken the position in the district court litigation and this bankruptcy case, as well as various estoppel letters sent to the Debtor, that it has a claim for accrued interest. But BB&T's after-the-fact litigation position in the district court litigation and this case is hardly relevant to the Court's determination of how to interpret Judge Levens' final judgment. Accordingly, the Court concludes that BB&T is not entitled to any accrued interest.

BB&T is not entitled to attorney's fees.

BB&T also seeks entitlement to $671,780.48 in attorney's fees and costs. The Debtor contends BB&T is not entitled to prevailing party attorney's fees because it plainly did not prevail in the state court foreclosure action.[34] In fact, the Debtor points out that neither Judge Levens nor the Second District Court of Appeal has ever determined BB&T was the prevailing party.[35] That argument is somewhat misplaced, however, since BB&T claims it is entitled to attorney's fees and costs incurred *after* the state court final judgment under paragraph 9 of the promissory note, which provides that the Debtor is obligated to pay BB&T all costs it incurs *enforcing* the note.[36] The Court concludes that BB&T is not entitled to attorney's fees and costs under paragraph 9 of the note.

---

[33] Doc. No. 129 at 24-25.

[34] Doc. No. 130 at 11-12.

[35] *Id.* at 12.

[36] Doc. No. 129 at 22-23; Doc. No. 1.

The First District Court of Appeal's decision in *RJ & RK, Inc. v. Spence*, where the court reversed a trial court fee award under similar circumstances, is instructive.[37] The plaintiff in that case, Kimberly Spence, was the personal representative of Ronald Keeton's estate. Keeton held a mortgage on property owned by RJ & RK, Inc. Keeton also owned a company called Keeton Correctional Institutions (KCI), which leased RJ & RK's property to operate halfway houses. Keeton and RJ & RK agreed that KCI's monthly rent payments would be used to make RJ & RK's mortgage payments. After Keeton died, however, Spence directed KCI to stop making the monthly rent payments, which caused RJ & RK to default on the mortgage. Then she sued to foreclose the mortgage. Because Spence had essentially orchestrated the default (by preventing KCI from making the mortgage payments), the trial court denied her right to accelerate the mortgage, but it did award her the balance due on the mortgage, as well as the attorney's fees and costs she incurred.[38]

On appeal, the First District Court of Appeal reversed the fee award.[39] At the outset, the court made clear the fee provision at issue did not condition an award of fees on Spence prevailing in the action but instead permitted fees incurred enforcing or collecting an obligation. And while the court initially observed that it ordinarily lacked discretion to decline enforcement of a contractual fee provision, it did recognize an exception in cases where the conduct of a mortgagee bars acceleration of a mortgage.[40] According to the First District Court of Appeal, Spence (as the mortgagee) caused the mortgagor's default, so the trial court correctly concluded

---

[37] 855 So. 2d 642, 644 (Fla. 1st DCA 2003).

[38] *Id.*

[39] *Id.*

[40] *Id.*

she was not entitled to accelerate the mortgage, and as a consequence, Spence was not entitled to fees for enforcing the note.[41]

The same is true in this case. Like the trial court in *Spence*, Judge Levens expressly found that BB&T had orchestrated a default and denied BB&T the right to accelerate the note or foreclose its mortgage.[42] Because Judge Levens found that BB&T's inequitable conduct barred it from accelerating its note and foreclosing its mortgage, this Court concludes it would be improper to award BB&T the fees incurred enforcing its note.

There is a factual issue whether BB&T is
<u>entitled to post-maturity interest at the default rate</u>.

BB&T claims it is entitled to $410,350.50 in post-maturity interest at the default rate because the Debtor failed to pay the note in full by the maturity date. The Court is sympathetic to the Debtor's argument that BB&T declared a premature default.[43] It does appear, as the Debtor argues, that the five-day grace period in the note applies to the final balloon payment just the same as it does any other monthly payment.[44] And there is no question BB&T, which admittedly contends the grace period does not apply to the balloon payment, did not wait five days before suing to foreclose its mortgage.[45] But the Debtor fails to cite any authority for the proposition that a premature declaration of default discharges its obligation to pay post-maturity interest where it never tendered payment within the five-day cure period.[46]

---

[41] *Id.*

[42] Doc. Nos. 129-2 & 129-3.

[43] Doc. No. 130 at 14-15.

[44] Doc. No. 129-1.

[45] Doc. No. 129-24.

[46] Doc. No. 130 at 14-15.

The Court, however, does have some concern that BB&T arguably prevented the Debtor from tendering the balloon payment. As a practical matter, the only way the Debtor (whose sole asset is the storage facility) could have tendered the final balloon payment is if it could have sold the storage facility or refinanced it. In either case, the Debtor would have needed an estoppel letter from BB&T. It is undisputed that the Debtor requested and received several estoppel letters from BB&T, and in each case, the estoppel letter overstated the amount due on the loan (either by $2.3 million or $4.7 million depending on the estoppel letter).[47]

Florida courts have held, in a variety of contexts, that the refusal to accept a proper tender will prevent the collection of interest because the failure to receive payment is due to the promisee's own action:

> In those cases the tender of performance will not operate as a discharge of the debt nor does the refusal to accept the money tendered operate as a discharge of the debt. However, the refusal to accept a proper tender will prevent the collection of interest or other damages because the failure to receive payment is due to the promisee's own action.[48]

Here, there is a question of fact whether BB&T's failure to provide an accurate estoppel letter prevented the Debtor from tendering the actual amount due on the note or if BB&T would have accepted a tender of the correct amount due if the Debtor could have raised the funds absent a proper estoppel letter.

The Court realizes it previously discouraged parties from putting on evidence regarding the estoppel letters. But in light of the argument about post-maturity default interest, the estoppel letters and the effect they had, if any, on the Debtor's ability to fund the balloon payment is

---

[47] Doc. No. 130 at 14; Doc. No. 130-7.

[48] *See, e.g., Multach v. Adams*, 418 So. 2d 1254, 1255 (Fla. 4th DCA 1982); *Fowler v. Gartner*, 89 So. 3d 1047, 1049 (Fla. 3d DCA 2012).

relevant. Accordingly, the Court will decline to rule whether post-maturity default interest is recoverable as a matter of law and consider additional evidence (and argument) on that issue at the December 30, 2015 confirmation hearing.

## Conclusion

There is no dispute that the Debtor owed $4,754,860.26 as of June 30, 2009 or that the Debtor made $461,407.35 in payments from February 28, 2014 through April 28, 2015.[49] Because the Court has concluded that BB&T is not entitled to accrued interest as a matter of law, $164,287.26 of those payments should be applied to reduce the outstanding principal to $4,590,573.00. BB&T is not entitled to any attorney's fees or costs incurred from the judgment through the petition date. But there is a question of fact whether BB&T is entitled to post-maturity default interest.[50] The Court will grant partial summary judgment on the Debtor's motion for summary judgment on these issues and enter a separate order sustaining the Debtor's objection to BB&T's claim for accrued interest and attorney's fees and costs as a matter of law but overrule the objection to the post-maturity interest without prejudice.

Attorney Stephen R. Leslie is directed to serve a copy of this order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the order.

**Stephen R. Leslie**
**Mark F. Robens**
**Stichter, Riedel, Blain & Postler, P.A.**

**Edward William Collins**
**The Law Office of William Collins, P.A.**
  *Counsel for the Debtor*

---

[49] Doc. No. 129-21.

[50] One other issue remains unresolved. In its proof of claim, BB&T claims $288,091.74 in ad valorem taxes and $8,996.40 in real estate taxes. Those amounts are also included in the report by BB&T's expert. Doc. No. 129-21. The Debtor objects on the basis that BB&T has offered no evidence to support those amounts. Neither party, however, adequately briefed the issued. So the Court will overrule the Debtor's objection without prejudice and resolve this issue at the December 30 confirmation hearing.

**John A. Anthony**
**Stephenie B. Anthony**
**Allison C. Doucette**
**Anthony & Partners, LLC**
  *Counsel for BB&T*